# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN OLIVER | CIVIL ACTION |
| VERSUS | NO. 18-7845 |
| MARLIN N. GUSMAN, ET AL. | SECTION "J"(4) |

## REPORT AND RECOMMENDATION

Before the Court are the **Motion for Judgment on the Pleadings (Rec. Doc. No. 29)** filed by defendants Chief Michael Laughlin and Major Edward Hosli, the **Motion for Judgment on the Pleadings (Rec. Doc. No. 44)** filed by the defendant Sheriff Marlin Gusman, and the **Motion for Judgment on the Pleadings (Rec. Doc. No. 45)** filed by the defendant Major Chaz Ruiz, each seeking dismissal of the claims asserted in plaintiff Steven Oliver's Second Amended Complaint[1] (Rec. Doc. No. 25) for failure to state a claim for which relief can be granted. The motions were submitted to the Court without oral argument on June 19, 2019, and July 3, 2019. The plaintiff has filed an opposition (Rec. Doc. Nos. 42, 51, 52) to each motion.

## I.   Factual Background

On August 17, 2017, Oliver and inmates Corey Simmons ("Simmons") and Jamie Massey ("Massey") were among a group of inmates taken from the Orleans Justice Center ("OJC") to the Elayn Hunt Correctional Center ("Hunt") in an Orleans Parish Sheriff's Office ("OPSO") van for medical treatment.[2] Deputies Michael Lee ("Lee") and Thomas Sutherland ("Sutherland") also

---

[1]Because Oliver did not adopt either of the prior complaints, the Second Amended Complaint supersedes and is the only complaint before the Court. *See Montgomery v. Walton*, 759 F. App'x 312, 313 (5th Cir. 1994) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."); *Stewart v. City of Houston Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010).

[2]Rec. Doc. No. 25, pp. 5-6, ¶¶11-12.

were riding in the transportation vehicle. Oliver alleges that although he was restrained, during the course of the ride to Hunt, Massey (the offending inmate) was able to remove his "belly chain" restraint and used the padlock and chain to hit and choke Simmons (another inmate) causing him multiple facial injuries and a spray of blood throughout the van.[3] Massey then struck Oliver (the plaintiff) several times and used his thumb to poke Oliver in the rectum through his pants.[4]

Despite witnessing the events, neither Lee nor Sutherland intervened to protect Oliver, nor did they report the events to their supervisors. They instead remained silent.[5] According to Oliver, Lee and Sutherland's inaction was the result of a long series of dereliction of duties by the OPSO officials in the underreporting and prevention of violence in the Orleans Parish Prison ("OPP").

After the incident, Oliver and Simmons required medical attention for facial lacerations, fractured nasal bones, contusions of the scalp, and back injuries.[6] Oliver also alleges that there were other witnesses in the van, as well as a video and audio recording that captured the twenty-two (22) minute attack inside the van.[7] He alleges that Lee and Sutherland's acts and failures were intentional, wanton, malicious, reckless, and callously indifferent to his rights, and a result of the policies and practices of the OPP officials of failing to investigate and punish inmate-on-inmate violence and the staff's mishandling of those attacks.[8]

---

[3] *Id.*, pp. 5-6, ¶¶11, 15-16.

[4] *Id.*, pp. 5-6, ¶¶11, 16.

[5] *Id.*, p. 1.

[6] *Id.*, p. 6, ¶19.

[7] *Id.*, p. 6, ¶¶13-14.

[8] *Id.*, pp. 6-7, ¶20, ¶21.

Oliver filed this lawsuit against Sheriff Marlin Gusman, Warden Chaz Ruiz, Investigations Director Edwin Hosli, Investigations Chief Michael Laughlin, Deputy Lee, Deputy Sutherland, and the offending inmate, Jamie Massey, alleging the violation of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment through the deliberate indifference to his safety and serious medical needs. Oliver in addition alleges a number of claims under state law. He asserts a battery claim against Massey, Sutherland, and Lee. He alleges that Sheriff Gusman is liable for the torts of Sutherland and Lee committed in the course and scope of their employment with the Sheriff's Office. He also claims that Gusman, Ruiz, Hosli, and Laughlin negligently supervised Sutherland and Lee. He alleges that Sutherland and Lee were negligent in failing to protect him and Simmons (who is not a plaintiff) in the van. Oliver also asserts a direct action against unidentified insurance companies.

The defendants each were sued in their individual capacity, and Sheriff Gusman also was sued in his official capacity. Oliver seeks judgment in his favor and against the defendants for unspecified compensatory, special, and punitive damages and costs and attorneys' fees under 42 U.S.C. § 1988.

In response to the complaint, the four prison official defendants, Laughlin, Hosli, Gusman, and Ruiz, filed separate motions for judgment on the pleadings seeking dismissal of Oliver's claims, each asserting that Oliver's complaint does not allege that (1) they participated in the transport of Oliver to Hunt, (2) they supervised either Sutherland or Lee, (3) they had any direct role in the incident, or (4) they were aware of a risk to Oliver's safety.[9] The defendants also assert they are entitled to qualified immunity from Oliver's suit arguing that no reasonable prison official

---

[9]Rec. Doc. Nos. 29, 44, 45.

could have known they could be held liable under the circumstances of this case. As a result, Laughlin, Hosli, Gusman and Ruiz each seek dismissal of the federal claims asserted against them for failure to state a claim for which relief can be granted.[10] Sheriff Gusman also contends that Oliver has not stated a claim against him in his official capacity, because he was not the final policymaker in charge of the jail administration or policies at the time of the attack.

Oliver opposes the three motions arguing that he has sufficiently alleged a basis for liability against each defendant. Specifically, Oliver argues that he has alleged supervisory liability against Hosli, Laughlin, Ruiz, and Gusman, because they allowed or implemented policies of permissiveness at OPP that deprived him of his constitutional rights.[11] In his opposition memoranda, Oliver argues that the misconduct of the subordinate officers is affirmatively linked to Hosli and Laughlin's *de facto* policies and inaction in the investigation of inmate-on-inmate violence at OPP and staff misconduct. He also asserts that his injuries were caused by the *de facto* policies of Gusman and Ruiz of failing to properly train and supervise subordinate officers in the protection and transportation of inmates. He argues that these causal links are sufficient to state a claim against each of the defendants.

Oliver also contends that the Sheriff can be held liable in his official capacity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), because he is responsible for the problems that "generated the attack" on Oliver even if at the time of the incident Gusman was not in charge of the jail's operations.[12] Oliver further contends that Gusman is liable, because

---

[10]The moving parties seek dismissal only of Oliver's federal claims against them. The defendants' motions do not address or seek dismissal of plaintiff's state law claims.

[11]Rec. Doc. Nos. 42, 51, 52.

[12]Rec. Doc. No. 52.

the consent judgment setting forth the duties of the Compliance Director[13] at OPP/OJC provides that the director may seek advice and approval from the Sheriff regarding the decisions that materially impact compliance with the consent judgment. Oliver also notes that Gusman was involved in selecting the Compliance Director from a list of three candidates selected by the other parties in the *Jones* class-action case.[14] As such, the Sheriff maintained policy authority and can be held liable under the claims asserted in the Second Amended Complaint.

Oliver also alleges that Ruiz as warden was responsible for the policies, procedures, and operations of the jail and the employees, including those involved in the transport of inmates.[15] He claims that Ruiz was responsible for assuring that the prison and transport vans were properly staffed and for investigating and reporting inmate-on-inmate violence and staff misconduct. Oliver further contends that Ruiz's motion should be denied because he, like the other defendants, knew of the systemic violence tolerated by the guards under his supervision but failed to remedy the

---

[13]In *Jones v. Gusman*, Civ. Action 12-859"I"(5) (E.D. La.), the class of prisoner-plaintiffs and the United States of America sought redress including injunctive relief because of various alleged unconstitutional conditions at OPP (now OJC), including rampant inmate violence. The Honorable Judge Lance Africk eventually adopted a consent judgment submitted by the parties which set forth the procedures and protocol for reparation and redress of the alleged unconstitutional conditions and plans for future improvement. Civ. Action 12-859, Rec. Doc. No. 466. The consent judgment led to the eventual appointment of a Compliance Director, the first of which was appointed on October 1, 2016, to assure that the OPSO complied with the consent judgment. *Id.*, Rec. Doc. No. 1082. Since that time, the Compliance Director has had "final authority to review, investigate, and take corrective action regarding OPSO policies, procedures, and practices" in an effort to bring the prison into compliance with the consent judgment. *Id.* at p.12. The Compliance Director's also has final authority to complete the training of prison staff on all policies. *Id.* at p.3. The Compliance Director has "final authority to . . . recruit, hire, discipline, terminate, promote, demote, transfer, and evaluate employees. . . ." *Id.* at p. 12. This includes the Compliance Director's "final authority to direct specific actions to attain or improve compliance levels, or remedy compliance errors, . . . including but not limited to: (a) changes to Jail policies or standard operating procedures and practices; (b) personnel decisions, including but not limited to . . . finding and disciplinary actions in misconduct cases . . . and the discipline or demotion of staff . . ." *Id.* at p.13.

[14]Rec. Doc. No. 52.

[15]Rec. Doc. No. 51.

violence. For these reasons, Oliver claims he has stated a claim sufficient to survive the Rule 12(c) motions filed by Ruiz and the other defendants.

## II. **Standards of Review under Fed. R. Civ. P. 12(c)**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate if the matter can be adjudicated by deciding questions of law rather than factual disputes. *Brittan Commc'ns Int'l Corp. v. Southwest Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). A Rule 12(c) motion is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id*. The complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id*. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

In considering the sufficiency of the claims under Rule 12, the court generally may not look beyond the four corners of the plaintiff's complaint. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *see Hicks v. Lingle*, 370 F. App'x 497, 497 (5th Cir.), *cert. denied*, 562 U.S. 1111 (2010); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). A court may, however, consider matters that are outside the pleadings if those materials are matters of public record. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994). The court may also consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)).

## III. Discussion

### A. Claims Against the Defendants in Their Individual Capacities

Oliver sued the defendants Gusman, Hosli, Laughlin, and Ruiz, in an individual capacity seeking relief for the violation of his constitutional rights by the subordinate officers, Sutherland and Lee, and the injuries occurring in the attack by inmate Massey. When a constitutional violation is alleged, 42 U.S.C. § 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations

7

of federal statutes, as well as of constitutional norms." *Id*. To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). The law is well settled, however, that a defendant is personally liable under § 1983 only if he had personal involvement in the alleged unconstitutional act. *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981).

Oliver alleges that the individual defendants, as supervisory officials at the prison, are liable for the violations of his Eighth and Fourteenth Amendment[16] rights to be free from cruel and unusual punishment through the failure to supervise and train subordinate officers and the deliberate indifference to his serious medical needs. The Eighth Amendment's prohibition on "cruel and unusual punishments," forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). This includes all aspects of prison life, including the intentional indifference to an inmate's harm at the hands of other inmates and the deliberate indifference to providing care for an inmate's serious medical needs. *See Id*. at 104 (medical needs); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (safety); *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (same). An official acts with intentional indifference when he "knows that inmates face a substantial risk of serious harm and disregards

---

[16]For pretrial detainees, constitutional claims arise under the Due Process Clause of the Fourteenth Amendment and are addressed under the Eighth Amendment standards because it places a duty on the State and its actors to protect against harm to persons in its confinement. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Oliver does not allege to have been a pretrial detainee or denied other protected due process interests.

that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

In this case, Oliver has not alleged that any of the moving defendants, Gusman, Hosli, Laughlin, or Ruiz, were present for or personally involved in the attack by Massey that took place in the transport van. He instead alleges that the officials had a subjective knowledge of the pervasive inmate-on-inmate violence at the prison prior to the attack and apparently should have known that Oliver was at risk in the transport van. However, to state a claim of personal, individual liability there must be a showing that the official knew of a substantial risk to Oliver in the transport van and failed to abate it. Oliver has not done so. There is no plausible link alleged or reasonable inference of danger to be drawn between the past violence within the prison and a risk to Oliver among cuffed and shackled inmates in a transport van. Oliver, therefore, has not alleged that the defendants had knowledge of the specific or potential danger posed by Massey or failed to take corrective action based on that knowledge.

Oliver also has not alleged any facts related to his conclusory claim of deliberate indifference to his serious medical needs. Other than the mere mention of the phrase, Oliver has not alleged that the officials knew of a need for medical care and deliberately failed to provide it.

For these reasons, Oliver has not stated a claim of personal liability against the moving defendants Gusman, Hosli, Laughlin, and Ruiz.

Nevertheless, Oliver also asserts that the defendants are individually liable in their supervisory roles because their failure to control the known violence at the prison created *de facto* policies of permissiveness and failure to adequately supervise and train subordinate officers. Oliver asserts that the defendants' liability manifests from these *de facto* policies at the prison that permitted the inadequate reporting and investigation of inmate-on-inmate violence and related staff

9

misconduct. He also alleges that these *de facto* policies were a direct cause of his injuries because the subordinate deputies, Sutherland and Lee, knew that there would be no repercussions for their failure to intervene in Massey's attack or their failure to report it.

Supervisory liability can be established without direct participation in the alleged events "'if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Leal v. Wiles*, 734 F. App'x 905, 907 (5th Cir. 2018) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Supervisory liability may also arise from the official's intentional failure to promulgate policy to leads to the plaintiff's injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). The same is true when a supervisor fails to supervise or train subordinate officers with a deliberate indifference to the safety or care of the inmates. *Mitchell v. City of New Orleans*, 184 F. Supp.3d 360, 374 (E.D. La. 2016) (quoting *Porter*, 659 F.3d at 446); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). "[T]o establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446 (quoting *Gates v. Tex. Dept. of Prot. and Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). The actions and decisions of the prison officials that "are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Allegations of "[n]egligence or even gross negligence" are not enough to establish deliberate indifference or a claim of supervisory liability. *Campos v. Webb Cnty.*, 597 F. App'x 787, 792 (5th Cir. 2015).

In his complaint, Oliver alleges that the supervisory defendants, Gusman, Hosli, Laughlin, and Ruiz, acted as *de facto* policymakers and through the failure to train deputies on the proper

manner to report, investigate inmate-on-inmate violence, and enforce consequences for the subordinates' failure to report and prevent the violence. This he claims was the moving force behind Sutherland's and Lee's failure to intervene in the attack, report the attack while it was happening, or seeking the aid of other law enforcement officers to end the attack. Oliver generally references the prior environment and failings of the administration in the past, and those current policies and practices falling short of the goals of the *Jones* consent judgment, which he claims afforded the deputies an opportunity to abandon their duties and allowed Oliver's injuries.

Oliver defines the subjective knowledge and *de facto* policies of the defendants through reference to the DOC documents and Monitor's reports from the *Jones* class-action case. However, to establish supervisory liability, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). The plaintiff also must show that the inadequate policy or training program of the defendants was in place "at the time of [the plaintiff's] assault" for the risk to be considered obvious and attributable to the supervisory official. *Leal*, at 908.

In this case, the policies and training programs in place at the time of Oliver's attack were those of the post-consent judgment administration at the prison. The events predating the appointment of the Compliance Director on October 1, 2016, cannot be considered to have directly caused or influenced the attack on Oliver on August 17, 2017. Oliver has not alleged that the defendants, other than Gusman, held supervisory roles at the prison when the alleged *de facto* policies and training programs were implemented. Nevertheless, the existence of any past, *de facto* policies and training programs at the prison were not in place at the time of the attack.

Thus, although Oliver labels these defendants as supervisors and policymakers, he has done no more than assert liability based on their positions, titles, and ranks at the prison at the time of the attack, which is not a proper basis for supervisory liability under § 1983. A prison official (even if a supervisory officer) is not liable under § 1983 merely because of their title or position at the time of plaintiff's injury. *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984); *Evans v. Gusman*, No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); *Castillo v. Blanco*, No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

Oliver has not asserted a tenable connection between the alleged "derelict" past investigations allowed by Hosli and Laughlin and the attack that occurred in the van or the failure of Sutherland and Lee to intervene. In addition, his allegations against these officials are based on their supervision and training of the ISB investigators, not transport officers, Sutherland or Lee. Similarly, he has not asserted more than conclusory claims that Ruiz as Warden or Gusman as Sheriff intentionally implemented any "derelict" performance, investigation, or training policies in the prison that were in place at the time of the attack. While he alleges that Ruiz and Gusman were responsible officers, he does so based solely on conclusions drawn from their official titles rather than their supervisory actions at the time.

Oliver also has not alleged that Gusman, Hosli, Laughlin, or Ruiz were supervising Sutherland or Lee at the time of the incident or had trained Sutherland and Lee in their duties. Oliver also has not alleged that Sutherland or Lee were following a particular policy (actual or *de facto*) intentionally implemented by any of these officials. Oliver simply has not alleged that any of the supervisory officials acted deliberately for the purpose of causing him constitutional or physical injury through actual or *de facto* policies at the prison. When the plaintiff does not

12

adequately allege an intentional indifference, the court need not address the other aspects of supervisory liability. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

For these reasons, Oliver has failed to state a claim under § 1983 against Gusman, Hosli, Laughlin, and Ruiz in their individual capacity personally or as supervisory officials. Because Oliver has failed to allege a constitutional violation, the Court need not address the qualified immunity defense. The Rule 12(c) motions filed by Gusman, Hosli, Laughlin, and Ruiz should be granted and the § 1983 claims against them in their individual capacities personally and as supervisory officials should be dismissed for failure to state a claim for which relief can be granted.

### B. Claims against Sheriff Gusman in an Official Capacity

Oliver also sued defendant Gusman in his official capacity as Sheriff of Orleans Parish responsible as the final policymaker at OPP. It is well settled that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *see McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). As the United States Fifth Circuit Court of Appeals has explained, under Louisiana law, "the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff." *Id.* at 469-70; *see also Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 283 (5th Cir. 2002) (citing *Porche v. St. Tammany Parish Sheriff's Office*, 67 F. Supp.2d, 631, 635 (E.D. La. Oct. 5, 1999)); *Victoria W. v. Larpenter*, 205 F. Supp.2d 580, 586 n.16 (E.D. La. May 21, 2002) (lawsuit against a Louisiana sheriff in his official capacity "is the equivalent of a suit against the office he holds").

Thus, Oliver's claims against Sheriff Gusman in his official capacity are actually claims against the local governing entity he serves, Orleans Parish through the OPSO ("Orleans Parish"

or "the Parish").[17] *See Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d at 392 ("suit against Sheriff Daniel in his official capacity is a suit against the Parish"); *see also, Corley v. Prator*, 290 F. App'x 749, 752 (5th Cir. Aug. 25, 2008) (suit against sheriff in his official capacity "must be treated as suit against the municipality"); *Porche*, 67 F. Supp.2d at 635 ("La. Rev. Stat. § 33:4713 requires the parish to provide and bear the expense of offices as may be needed by the sheriffs of the district and circuit courts."); *accord Victoria W.*, 369 F.3d at 481 (where sheriff's office employees sued in official capacity and the Parish were the only remaining defendants, "[t]he Parish is thus the only true defendant remaining in the suit.").

In his motion, Sheriff Gusman concedes that "typically," the parish sheriff in his official capacity is the final policymaker and appropriate party to answer for the constitutional violations committed by his office or deputies.[18] Sheriff Gusman argues, however, that general rule does not apply in this case because of the appointment of a Compliance Director.

Specifically, Sheriff Gusman argues that, for purposes of a *Monell* suit, Oliver would have to allege the deprivation of a federally protected right that was caused by an action taken pursuant to an official municipal policy implemented by him as the final policymaker. *See Valle v. City of Houston*, 613 F.3d 536, 521 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 691). Sheriff Gusman alleges that he was not the final policymaker when Oliver was attacked and therefore is not the

---

[17]As a matter of law, the Orleans Parish Sheriff's Office itself is not a legal entity capable of being sued, leaving the Parish as the appropriate governing body. *See Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (citing La. Rev. Stat. Ann. § 33:361; *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 909 (E.D. La. 2001); *Manley v. State*, No. 00-1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2001); *Norwood v. City of Hammond*, No. 99-879, 1999 WL 777713, at *3 (E.D. La. 1999); *Boudreaux v. Bourgeois*, No. 98-3809, 1999 WL 804080, at *3 (E.D. La. 1999); *Dugas v. City of Breaux Bridge*, 757 So. 2d 741, 744 (La. App. 3d Cir. 2000)); *accord Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988). The State of Louisiana grants no such legal status to any law enforcement office or department. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. App. 3d Cir. 1977).

[18]Rec. Doc. No. 44-1, p. 14.

proper party to be sued. He argues that the Compliance Director, appointed on October 1, 2016, was the final policymaker for all aspects of the OPP/OJC operating procedures, policies, training, investigation, and discipline of staff. As such, Sheriff Gusman asserts that Oliver has not alleged the policymaker component to state a *Monell* claim.

In response, Oliver alleges that the Sheriff is no less liable in his official capacity because, after the consent judgment, the Sheriff was still regularly involved in the administration of the jail and continued to act as representative of the sheriff's office. In addition, Oliver argues that the *de facto* policies that led to his constitutional violations and injuries were implemented under Sheriff Gusman's administration. Because of this, Oliver asserts that the Sheriff was the relevant policymaker on behalf of his office.

There is some legal distinction between the nature of the capacity under which Sheriff Gusman is sued and the burden of the plaintiff to state a claim for liability under the *Monell* factors. Under Louisiana law, the Parish Sheriff is the official representative of his office, and the proper public official to be sued to answer for the actions of his office. *Accord Short v. Gusman*, No. 18-3174, 2019 WL 1326645, at *3-8 (E.D. La. Mar. 25, 2019) (finding the Compliance Director immune from an official capacity suit and addressing the claim as if brought against Sheriff Gusman in his official capacity). While the Compliance Director has the administrative and policymaking powers at this time, Sheriff Gusman remains the "democratically-elected Sheriff of Orleans Parish" who has only temporarily relinquished administrative and operational control of the prison to the Compliance Director.[19]

---

[19]Civ. Action 12-859, Rec. Doc. No. 1084, pp. 8-9.

Thus, Sheriff Gusman is the appropriate official under state law to be named in an official capacity for suit against the Parish through the Sheriff's Office. This legal status is not changed by the fact that the final policymaking authority has been temporarily given over to the Compliance Director.

Turning to Oliver's *Monell* claim, however, a plaintiff is obligated to identify the appropriate policy and policymaker to subject the Parish to liability. To state a claim under *Monell*, a plaintiff must allege (1) the existence of an official policy or custom, (2) a policymaker's actual or constructive knowledge of the policy or custom, and (3) a constitutional violation where the policy or custom is the "moving force" behind the plaintiff's injury. *Valle*, 613 F.3d at 541-42; *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). An "official policy or custom" may be "an actual policy, regulation or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542. It may also be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy."[20] *Esteves v. Brock*, 106 F.3d 674, 677 (citing *Monell*, 436 U.S. at 694).

A plaintiff must identify the specific municipal policy or custom that allegedly resulted in a deprivation of his constitutional rights. *See*, *e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547,

---

[20]When a plaintiff relies on the allegation that a custom or pattern constituted official policy, he must show that the pattern was "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 578). The pattern of incidents relied upon must have occurred prior to the alleged misconduct and "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 841. Finally, the prior incidents must point to the specific violation alleged in the plaintiff's case. *Peterson*, 588 F.3d at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003). Under *Monell*, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority." *Valle*, 613 F.3d at 542 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). A plaintiff satisfies the "moving force" requirement by "show[ing] that the municipal action was taken with the requisite degree of culpability and [demonstrating] a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

In his motion, Sheriff Gusman argues that Oliver has failed to state a *Monell* claim because he was not the final policymaker at the time of the attack in the van, a status required to state a *Monell* claim. However, in his opposition, Oliver contends that Sheriff Gusman should be held liable as the policymaker because "the allegations laid out in the complaint, allege that Plaintiff was the victim of a legacy of violence and mismanagement caused directly by Defendant Gusman's acts and omissions over several years." Rec. Doc. No. 52, p. 3.

However, the final policymaking authority over the prison (OPP/OJC) has been with the Compliance Director since October 1, 2016, before Oliver was attacked on August 17, 2017. Under the consent judgment, Sheriff Gusman remained in a representative capacity as an elected official with the opportunity to consult with the Compliance Director on limited topics only if that advice was sought by the Compliance Director. Despite this cursory role, all aspects of the administration of the employees, prisoners, and the prison have been passed to the Compliance Director, including implementation, execution, and training. Sheriff Gusman was not the final policymaker at the prison when Oliver was attacked in 2017.

As such, any *de facto* policies and practices that may undergird the statistics in the DOJ and Monitor's reports relied on by Oliver were not in place when Oliver was injured. Oliver cannot state a claim against Sheriff Gusman based on the past "reputation of OPP" demonstrated in those documents. *Hulitt v. Gusman*, Civ. Action 15-0064, Order and Reasons, Rec. Doc. No. 33, p.8 n.28 (E.D. La. Jul. 24, 2015) (Africk, J.). Contrary to Oliver's contentions, the *Jones* case did not open the door for a plaintiff to avoid the strict requirements of pleading a proper claim against the Sheriff under *Monell*.

Nevertheless, even if Oliver alleges that Sheriff Gusman maintained some official, policymaking role post-consent judgment, there was no Parish policy controlling the administration of the prison at that time of the attack. The Compliance Director is not a Parish official or part of the Sheriff's Office itself. *See Henry v. Gusman*, No. 18-4661, 2018 WL 8053773, at *4-5 (E.D. La. Dec. 12, 2018). The Parish cannot be held culpable for policy promulgated by the Compliance Director or left uncorrected by the Compliance Director's policies. Those policies are not under the control of the Parish or its officers. To hold the Parish or Sheriff Gusman in an official capacity liable would create a level of vicarious liability not encompassed by *Monell* or its progeny.

Thus, Oliver has failed to state a plausible claim against Sheriff Gusman in his official capacity. The Sheriff's Rule 12(c) motion should be granted and the claims against him in his official capacity dismissed.

**IV.    Recommendation**

It is therefore **RECOMMENDED** that the **Motion for Judgment on the Pleadings (Rec. Doc. No. 29)** filed by defendants Chief Michael Laughlin and Major Edward Hosli, the **Motion for Judgment on the Pleadings (Rec. Doc. No. 44)** filed by the defendant Sheriff Marlin Gusman,

and the **Motion for Judgment on the Pleadings (Rec. Doc. No. 45)** filed by the defendant Major Chaz Ruiz, be **GRANTED**.

It is further **RECOMMENDED** that plaintiff Steven Oliver's 42 U.S.C. § 1983 claims for denial of his Eighth and Fourteenth Amendment rights against cruel and unusual punishment through deliberate indifference to his safety and serious medical needs asserted against the defendants, Chief Laughlin, Major Hosli and Major Ruiz, each in their individual and supervisory capacities, and the claims against Sheriff Gusman, in his individual, supervisory, and official capacities, be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(c).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[21]

New Orleans, Louisiana, this 29th day of August, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[21]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.