UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEVEN OLIVER                                    CIVIL ACTION

VERSUS                                           No.: 18-7845

MARLIN GUSMAN, ET AL.                            SECTION: "J" (4)


## ORDER & REASONS

Before the Court is Plaintiff Steven Oliver's *Motion for Review of Magistrate Judge's Decision* **(Rec. Doc. 59)**, in which Plaintiff seeks review of the Magistrate Judge's Report and Recommendation (Rec. Doc. 57) that recommends granting Defendants Chief Michael Laughlin's, Major Edward Hosli's, Sheriff Marlin Gusman's, and Major Chaz Ruiz's motions for judgment on the pleadings (Rec. Docs. 29, 44, 45) and dismissing Plaintiff's claims against them with prejudice. Defendants filed an opposition (Rec. Doc. 64), and Plaintiff filed a reply (Rec. Doc. 70). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that Plaintiff's motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

On August 17, 2017, Plaintiff, a pretrial detainee in the custody of the Orleans Parish Sheriff's Office ("OPSO"), was being transported in a van along with a group of other inmates, including Corey Simmons and Defendant Jamie Massey. Defendants Michael Lee and Thomas Sutherland, deputies with OPSO, were riding in the front of the van and transporting the inmates from the Orleans Justice Center

("OJC") to Elayn Hunt Correctional Facility. During the trip, Massey removed his belly chain restraint and hit Simmons with the padlock on the chain and choked him with the restraint. Massey then struck Plaintiff multiple times "and used his thumb to poke him in the rectum through his pants."[1] Massey's attack lasted for twenty-two minutes, during which time Lee and Sutherland took no action to protect Plaintiff. They also did not report the event to their supervisors. After the incident, Plaintiff and Simmons required medical attention for facial lacerations, fractured nasal bones, contusions of the scalp, and back injuries.

Plaintiff filed suit on August 16, 2018, against Sheriff Marlin Gusman, Major Chaz Ruiz, warden for OPSO,[2] Major Edwin Hosli, commander of the OPSO Investigative Services Bureau, Chief of Investigations Michael Laughlin, Deputy Lee, Deputy Sutherland, and Massey, asserting claims of deliberate indifference under the Eighth and Fourteenth Amendments against all Defendants except Massey and state law tort claims for battery against Massey, Sutherland, and Lee, negligent failure to protect against Sutherland and Lee, negligent supervision against Gusman, Ruiz, Hosli, and Laughlin, and vicarious liability against Gusman. Defendants Hosli and Laughlin,[3] Gusman,[4] and Ruiz[5] (collectively, the "Moving Defendants") moved for judgment on the pleadings.

---

[1] (Second Amended Complaint, Rec. Doc. 25, at 5) (hereinafter "SAC").
[2] Plaintiff initially named Gary Maynard, the appointed compliance director for the OJC, as a defendant but subsequently dismissed him. (Rec. Doc. 11). Plaintiff then named Major Nicole Harris as a defendant (Rec. Doc. 10, at 3), but later substituted Major Ruiz for her in his Second Amended Complaint upon learning that Major Ruiz was warden at the time of the incident (Rec. Doc. 25, at 3).
[3] (Rec. Doc. 29).
[4] (Rec. Doc. 44).
[5] (Rec. Doc. 45).

The Magistrate Judge ("MJ"), in her Report and Recommendation, found that the motions should be granted and that Plaintiff's claims against the Moving Defendants should be dismissed with prejudice. The MJ found that the deliberate indifference claims should be dismissed because (1) Plaintiff failed to show that the Moving Defendants "knew of a substantial risk [of harm] to [Plaintiff] in the transport van and failed to abate it";[6] (2) any de facto policy implemented "predating the appointment of the Compliance Director[7] on October 1, 2016, cannot be considered to have directly caused or influence the attack on" Plaintiff, and Plaintiff failed to allege that Ruiz, Hosli, or Laughlin held supervisory roles when such policies were implemented;[8] and (3) Plaintiff failed to allege "a tenable connection between the alleged 'derelict' past investigations allowed by Hosli and Laughlin and the attack that occurred in the van or the failure of Sutherland and Lee to intervene," or that any of the Moving Defendants "were supervising Sutherland and Lee at the time of the incident or had trained Sutherland and Lee in their duties."[9] Because the MJ found that Plaintiff had failed to sufficiently allege a constitutional violation, the MJ did not address the qualified immunity defense. The MJ further found that any claim for municipal liability should be dismissed because (1) the Compliance Director, not Sheriff Gusman, was the final policymaker at the prison at the time of the incident;

---

[6] (Magistrate Judge's Report and Recommendation, Rec. Doc. 57, at 9) (hereinafter "R&R").

[7] In 2013, Sheriff Gusman entered into a consent judgment with the U.S. Department of Justice ("DOJ") and a class of plaintiffs to address alleged constitutional violations in the conditions at Orleans Parish Prison (now OJC). *See Jones v. Gusman*, 296 F.R.D. 416 (E.D. La. 2013). By stipulation of the parties, the court appointed a Compliance Director to implement the consent judgment. *See Jones v. Gusman*, No. 12-859, ECF No. 1082 (E.D. La. June 21, 2016).

[8] (R&R, Rec. Doc. 57, at 11).

[9] *Id.* at 12.

(2) any de facto policies in place prior to the appointment of the Compliance Director were not in place at the time of the incident; and (3) Orleans Parish "cannot be held culpable for policy promulgated by the Compliance Director or left uncorrected by the Compliance Director's policies" because the Compliance Director is not a Parish official or part of OPSO.[10]

Plaintiff now seeks review of the MJ's decision. He contends that the MJ erred by relying on "the fundamentally false premise" that there was no longer a custom of "neglecting to track inmate complaints and failing to properly train on intervention and investigation," which allowed for inmate-on-inmate violence to continue.[11] Thus, he argues that his "complaint plausibly alleges a longstanding culture of inmate-on-inmate violence and that deficient training and supervision contribute to this violence" because the "inmate-on-inmate violence is tied to the prevalence of unreported violence at the jail" and is "exacerbated by . . . inadequate employee training and supervision," and the Moving Defendants "demonstrated deliberate indifference by failing to take action that was obviously necessary to prevent or stop the violence that was visited upon detainees like [Plaintiff]."[12] Further, he points to allegations in his Complaint that the levels of inmate-on-inmate violence remained high months after the attack in the van.

Regarding the deliberate indifference claims, Plaintiff contends that the MJ committed legal error by concluding that he had "to prove 'that the defendants had

---

[10] *Id.* at 19.
[11] (Rec. Doc. 59-1, at 3, 5).
[12] *Id.* at 6, 8, 11.

knowledge of the *specific or potential danger posed by Massey* or failed to take corrective action based on that knowledge.'"[13] Regarding the municipal liability claim, he maintains that Sheriff Gusman was the final policymaker responsible for OJC, notwithstanding the appointment of the Compliance Director, because Gusman retained some authority over the Director with respect to appointment and approval of certain decisions and shared authority with the Director in other respect. Ultimately, Plaintiff argues, "At the end of the day, *someone* must answer in court for the systemic problems at [OJC]."[14]

## LEGAL STANDARD

Because Plaintiff timely objected, this Court reviews the MJ's Report and Recommendation de novo. *See* Fed. R. Civ. P. 72(b)(3); *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). In deciding a motion under Rule 12(c), the Court must determine whether the complaint, viewed in the light most favorable to the plaintiff, states a valid claim for relief. *Id.* While the Court must accept the factual allegations in the pleadings as true, the "plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding the motion, the Court may look only to the pleadings, *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002), and exhibits attached to the pleadings, *see Voest-Alpine*

---

[13] *Id.* at 21-22 (quoting R&R, Rec. Doc. 57, at 9).
[14] *Id.* at 19.

*Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998). The Court may consider materials outside the pleadings if those materials are matters of public record. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

## DISCUSSION

### I.  DELIBERATE INDIFFERENCE

Plaintiff asserts that the Moving Defendants violated his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). This right extends to pretrial detainees through the due process clause of the Fourteenth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). To establish a violation of this right, a detainee must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official acted with "deliberate indifference to inmate health and safety." *Williams*, 797 F.3d at 280 (quoting *Farmer*, 511 U.S. at 834). In this context, deliberate indifference contains a subjective requirement;[15] a plaintiff must show that (1) the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official "must also draw the inference." *Id.* at 281 (quoting *Farmer*, 511 U.S. at 837).

---

[15] Plaintiff argues that an objective standard should apply to him as a pretrial detainee in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). However, the Fifth Circuit has continued to apply a subjective standard even after *Kingsley*, and this Court is bound by those decisions. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017).

Under 42 U.S.C. § 1983, a plaintiff cannot hold supervisory officials liable under a theory of vicarious liability; instead, the plaintiff must show that the conduct of the supervisors denied the plaintiff his constitutional rights. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Where the plaintiff alleges a failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.* (citations omitted). "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.* at 381-82 (internal quotation marks and citation omitted); *see also Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) ("To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program." (cleaned up) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). A supervisory official may also be liable "for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017); *see also Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) ("A failure to adopt a policy can be deliberately indifferent when it is

obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights.").

## A.    Plaintiff Has Adequately Alleged a Constitutional Violation

Here, the Moving Defendants do not contend that Plaintiff was not exposed to conditions posing a substantial risk of serious harm. The issue, then, is whether Plaintiff has adequately alleged that any of the Moving Defendants acted with deliberate indifference. *See Williams*, 797 F.3d at 280.

On this point, the MJ erred by requiring that Plaintiff allege "that the defendants had knowledge of the specific or potential danger posed by Massey" to Plaintiff in the transport van.[16] As explained by the Supreme Court in *Farmer v. Brennan*:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."
>
> Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health," and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk. If, for example, prison officials were aware that inmate "rape was so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave

---

[16] (R&R, Rec. Doc. 57, at 9).

their beds and spend the night clinging to the bars nearest the guards' station," it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom.

511 U.S. at 842–44 (footnote and citations omitted). Plaintiff contends that the DOJ's findings letters[17] and the Jail Monitor's reports[18] "show[] that a substantial risk of inmate attacks was 'longstanding, pervasive, [and] well-documented,'" that the risk is exacerbated by OPSO officers' failure to properly supervise inmates and respond to requests for help, and that the Moving Defendants "must have known" about this risk because they would have been exposed to these documents in the course of their official duties. *Id.* at 842. Plaintiff further contends that the Moving Defendants were deliberately indifferent to this risk by failing to take action to prevent assaults, specifically by failing to train officers to properly supervise inmates and failing to implement policies to reduce and hold staff accountable for misconduct, including training on investigating and reporting misconduct. *See Rhyne*, 973 F.2d at 392. Finally, Plaintiff contends that the failure to implement such policies was "obviously likely to result in a constitutional violation" in light of the numerous alleged instances of inmate-on-inmate violence and officers failing to protect inmates. *Estate of Davis*, 406 F.3d at 381.

---

[17] In 2009 and 2012, the DOJ issued "findings letters" regarding the conditions of confinement at Orleans Parish Prison, noting "a systemic level of violence that poses a serious risk of harm to both inmates and correctional staff" and concluding that "[t]he conditions in OPP fail to meet the most basic obligation of prison officials to provide humane conditions of confinement." (SAC, Rec. Doc. 25, at 7-8).
[18] Pursuant to the consent judgment, a Jail Monitor was appointed to oversee implementation of the judgment. *See Jones*, 296 F.R.D. at 426. Although the Moving Defendants protest Plaintiff's reliance on the Monitor's reports, arguing that they are not admissible outside the *Jones* litigation, the Court here is only concerned with the allegations as stated in the complaint. Whether Plaintiff will be able to prove his allegations is a question for another day.

It is also not reasonable to assume that the informal policies or customs in place at OPSO were eradicated merely by the appointment of the Compliance Director. Indeed, Plaintiff's allegations (which the Court must accept as true, *see MySpace*, 528 F.3d at 418) are that these customs—failure to respond to or report inmate-on-inmate assaults and to investigate staff misconduct—continued beyond the appointment of the Compliance Director and that the Moving Defendants have not done anything to remedy the issues repeatedly highlighted by the DOJ and the Jail Monitor.

Finally, Plaintiff has sufficiently alleged that each of the Moving Defendants were responsible for these failures. He alleges that Sheriff Gusman "fail[ed] to adequately staff the OJC" and "fail[ed] to adequately train the staff at the OJC" to properly supervise inmates and "to report and investigate inmate-on-inmate violence" and staff misconduct.[19] He alleges that Warden Ruiz was "responsible for ensuring that staff properly intervene to protect prisoners when they are attacked by other prisoners" and "follow the proper practice of promptly reporting inmate-on-inmate violence and staff misconduct," yet "allow[ed] dereliction in his staff's investigation of inmate-on-inmate violence and reporting of staff misconduct."[20] He alleges that Chief of Investigations Laughlin and Major Hosli, Director of the Investigative Services Bureau, were responsible for "investigating and reporting inmate-on-inmate violence and staff misconduct," but "fail[ed] to train the staff adequately at the OJC in the proper way to do investigations into staff misconduct

---

[19] (SAC, Rec. Doc. 25, at 2, 7, 9).
[20] *Id*. at 3.

and inmate-on-inmate violence" and "allow[ed] derelict investigations."[21] Thus, Plaintiff has alleged a particular omission in the Moving Defendants' training program that causes employees to violate inmates' constitutional rights by failing to protect them from other inmates. *See Porter*, 649 F.3d at 447.

The Moving Defendants' arguments that they cannot be liable because they had no idea who Plaintiff was and were not direct supervisors of Defendants Lee and Sutherland fundamentally misconstrues the nature of Plaintiff's claims. *See Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015) ("The complaint does not seek to hold Defendants vicariously liable for the actions of their subordinates. Rather, it seeks to hold them liable for their own actions in promulgating[,] and failing to correct[,] . . . polices that exposed [Plaintiff] and other inmates to [a substantial risk of serious harm]."). In *Hinojosa*, the Fifth Circuit found that the plaintiff adequately alleged a constitutional violation where the defendants, the top three officials of the Texas Department of Criminal Justice, subjected him to dangerous heat conditions, resulting in his death, and thirteen other men had recently died under similar circumstances. *Id.* at 663, 666. The court rejected the defendants' argument that they could not be liable because the plaintiff had not alleged that they were aware of his specific medical history and needs, holding that the defendants' "lack of knowledge of [the plaintiff's] individual susceptibility to heat-related dangers cannot defeat an Eighth Amendment claim" under *Farmer*. *Id.* at 667. Thus, the court held that the plaintiff's allegations about the similar deaths, the prison's inadequate policies that

---

[21] *Id.* at 3-4.

failed to prevent those deaths, and the defendants' lack of action to change those policies in light of those deaths stated a claim for deliberate indifference. *Id.* at 668.

Plaintiff here challenges systemic deficiencies within OJC and OPSO that he alleges not only violated his constitutional rights but also resulted in numerous other instances of officers failing to protect inmates, which readily distinguishes many of the cases the Moving Defendants rely on. *See, e.g.*, *Brown v. Strain*, No. 09-2813, 2010 WL 5141215, at *10 (E.D. La. Dec. 13, 2010) (dismissing failure to train claim where plaintiffs "provided no evidence of a pattern of inadequate training that would support" a finding of deliberate indifference).[22] Plaintiff's complaint alleges that he was exposed to a substantial risk of serious harm from other inmates in light of OPSO officers' inadequate supervision of inmates and that the Moving Defendants were aware of this risk from the numerous prior instances of inmate-in-inmate assaults where officers failed to intervene, yet they failed to correct the polices that allowed these assaults to continue. Plaintiff has stated a claim for deliberate indifference to his constitutional right to safety.

## B. The Moving Defendants Are Not Entitled to Qualified Immunity

When considering a qualified immunity defense in the context of a Rule 12 motion, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*,

---

[22] The Moving Defendants rely on *Brown* for its conclusion that "[s]ince there is no evidence of [the sheriff's] personal involvement in [plaintiff's] arrest and there is no vicarious liability under § 1983, the personal capacity claims against [the sheriff] must be dismissed." *Brown*, 2010 WL 5141215, at *10. While it is true that there is no vicarious liability under § 1983, the Moving Defendants' argument conflates personal involvement with individual liability, which can be imposed for implementing or failing to correct unconstitutional policies. *See Alderson*, 848 F.3d at 420.

691 F.3d 645, 648 (5th Cir. 2012) (internal quotation marks and citation omitted). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts which both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.*

To overcome qualified immunity, the plaintiff must establish that (1) the allegations in the complaint show the defendant's conduct violated the plaintiff's constitutional rights, and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *See Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004). "The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). Showing that the right was clearly established requires a plaintiff to point out "a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates the law." *Keller v. Fleming*, ___ F.3d ___, 2020 WL 831757, at *6 (5th Cir. Feb. 20, 2020).

"It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 832-33). Therefore, the

question before the Court is whether the Moving Defendants' conduct was objectively reasonable in light of this clearly established law.

As alleged by Plaintiff, the Moving Defendants' conduct was objectively unreasonable in light of *Farmer* and the repeated warnings from the DOJ and the Jail Monitor. In *Longoria*, an appeal from an order denying summary judgment, the Fifth Circuit held that two of the defendants were not entitled to qualified immunity because genuine issues of material fact existed regarding whether these defendants had received information that would have made them aware of a substantial risk to the plaintiff's safety. *Id.* at 595. There was no dispute that the plaintiff was exposed to a substantial risk of serious harm or that the two defendants' failure to act on the information, if they had received it, would have been objectively unreasonable and constituted deliberate indifference. *See id.* at 590-92, 595.

Here, Plaintiff has alleged that the Moving Defendants knew of a substantial risk of serious harm to inmates in their custody from assaults by other inmates that officers would be unlikely to prevent because a pattern of similar incidents had been ongoing for several years before Plaintiff was attacked. Thus, their failure to correct policies known to cause constitutional violations or to implement new policies is objectively unreasonable, regardless of whether the Moving Defendants knew that Plaintiff specifically was at risk. *See Farmer*, 511 U.S. at 843-44. The Moving Defendants are not entitled to qualified immunity at this stage of the proceedings.

## II.  MUNICIPAL LIABILITY

Plaintiff's claim against Sheriff Gusman in his official capacity is a claim for municipal liability. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). To state a claim of municipal liability, a plaintiff must allege "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citation omitted). The policy may consist of "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (citation omitted). Under the second prong, the policymaker must have "final authority to establish municipal policy with respect to the action ordered," which is a question of state and local law. *Valle*, 613 F.3d at 542 (citation omitted).

The failure to train municipal employees may also constitute a policy, but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, although municipalities are not normally liable for inadequate training of employees, failure to properly train constitutes an actionable policy if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. To state a claim for municipal liability for failure to train or supervise, a plaintiff must

allege (1) "a decision by a decisionmaker that amounts to a policy" (2) that was "so deliberately indifferent to the rights of the citizens that the [municipality] fairly can be said to be culpable for the injury," and (3) "sufficient causation between the specific policy decision and the resulting constitutional injury." *Brown*, 219 F.3d at 457.

Defendant Gusman argues that, despite his title, he was not the final policymaker at the time Plaintiff was attacked pursuant to a "Stipulated Order for Appointment of Independent Jail Compliance Director" in *Jones v. Gusman*, No. 12-859, ECF No. 1082 (E.D. La. June 21, 2016).[23] The Stipulated Order provides that the Compliance Director has "final authority to operate the Orleans Parish Jail ("OJC") and all jail facilities, including authority over the entire prisoner population in the custody of the Orleans Parish Sheriff's Office." *Id.* at 2. It gives the Compliance Director "final authority to review, investigate, and take corrective action regarding OPSO policies, procedures, and practices that are related to the Consent Judgment," and "final authority to direct specific actions to attain or improve compliance levels, or remedy compliance errors, regarding all portions of the Consent Judgment, including but not limited to . . . changes to Jail policies or standard operating procedures or practices." *Id.* at 12-13.

Plaintiff argues that Gusman is the final policymaker because he retains authority over the Compliance Director in several respects. The Stipulated Order first provides that "[t]he Compliance Director shall seek advice and/or approval from the Sheriff regarding all decisions that materially impact compliance with the Consent

---

[23] The Court may consider documents from the *Jones v. Gusman* litigation in deciding the instant motions because they are part of the public record. *See Blackwell*, 440 F.3d at 286.

Judgment, unless doing so would cause unreasonable delay." *Id.* at 3. The Stipulated Order also gives Sheriff Gusman limited authority to appoint the Compliance Director and approval authority over the initial remedial plan the Compliance Director would submit to the court. *See id.* at 3, 5-6.

"[T]he identification of policymaking officials is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (plurality opinion). Louisiana law provides that the sheriff is the final policymaker for a parish jail. *See* La. R.S. § 13:5539. The Stipulated Order is not state law; it is an order issued by a federal district court at the request of the parties in an action where plaintiffs alleged violations of their federal constitutional rights. *See Jones*, No. 12-859, ECF No. 1082, at 2 ("The parties enter into this agreement [in] order to avoid continued litigation and appeals.").

A close reading of the Stipulated Order reveals that the Compliance Director's authority is limited to implementing the Consent Judgment. For instance, it provides that "[t]he Compliance Director's authority will continue until the Court determines that . . . substantial compliance with the Consent Judgment is achieved." *Id.* at 3. The Consent Judgment, in turn, was an agreement between the *Jones* plaintiffs and Sheriff Gusman on how OPSO would address the constitutional violations alleged by the plaintiffs. *See Jones*, No. 12-859, ECF No. 466, at 5.

"When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Praprotnik*, 485 U.S. at 127. Here, the

17

Compliance Director's decisions are constrained by the Consent Judgment,[24] which was agreed to by Sheriff Gusman. While it is true that the Compliance Director is not subordinate to Sheriff Gusman, *see Jones*, No. 12-859, ECF No. 1082, at 3 ("The Compliance Director will be answerable only to the Court."), he is generally required to "seek advice and/or approval" from him, *id*. Thus, the Compliance Director derives his authority from Sheriff Gusman or, to put it another way, the Stipulated Order acts as a delegation of authority to the Compliance Director.

In *Crawford v. Gusman*, No. 17-13397, 2018 WL 3773407, at *3-4 (E.D. La. Aug. 9, 2018), a case the Moving Defendants rely on, the district court granted the Compliance Director's motion to dismiss the plaintiff's § 1983 claims on grounds of judicial immunity but found that the plaintiff had stated a claim against Sheriff Gusman in his official capacity, which necessarily required finding he was the final policymaker. Further, the Moving Defendants have not cited to *any* case where a court found that Sheriff Gusman was not the final policymaker for OPSO due to the appointment of the Compliance Director. "If . . . a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose." *Praprotnik*, 485 U.S. at 126. This is particularly true here, where Sheriff Gusman has delegated his authority to control OPSO because of his failure to maintain constitutional conditions of confinement at OJC and to avoid a contempt order. Accordingly, the Court finds

---

[24] Sheriff Gusman concedes this point. (Rec. Doc. 44-1, at 15) ("The [Stipulated Order] further discusses policy, noting that the only limitation on the Compliance Director's authority is that of the Consent Judgment itself.").

that Plaintiff has adequately alleged that Sheriff Gusman was the final policymaker for OPSO at the time he was attacked.[25]

Plaintiff has adequately alleged the remaining elements of a municipal liability claim as well.[26] He alleges that Sheriff Gusman oversaw de facto policies or customs of "not holding staff members accountable for inmate safety," "failing to report or investigate inmate-on-inmate violence," and insufficient "training relative to the conduct of investigations in a jail or prison environment."[27] He alleges that these customs existed since at least 2009 and continued even after he was attacked,[28] and that numerous incidents of inmate-on-inmate violence occurred as a result of these customs.[29] He has thus sufficiently alleged a custom. *See Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (holding that to adequately plead a municipal custom under *Twombly*, a plaintiff "must do more than describe the incident that gave rise to his injury" (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)); *see also Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843-44 (S.D. Tex. 2011) ("[A] plaintiff suing a municipality must provide fair notice to the defendant, and this requires more than gene[r]ically restating the elements of municipal liability. Allegations that provide such notice could include,

---

[25] In the alternative, the Court finds that both Sheriff Gusman and the Compliance Director were final policymakers. *See Praprotnik,* 485 U.S. at 126 ("We are also aware that there will be cases in which policymaking responsibility is shared among more than one official or body.").

[26] Sheriff Gusman has not set forth any argument on the remaining elements of Plaintiff's municipal liability claim. (*See* Rec. Doc. 44-1, at 13-18; Rec. Doc. 64, at 5-8).

[27] (SAC, Rec. Doc. 25, at 7, 13; *see also id.* at 10 (alleging "inadequate employee training and supervision")).

[28] *Id.* at 11-15.

[29] *Id.* at 9-11 (alleging "226 critical incidents," including officer use of force and inmate-on-inmate assaults, between August 1, 2014, and February 2015).

but are not limited to, past incidents of misconduct to others . . . or the specific topic of the challenged policy or training inadequacy.") (collecting cases).

Plaintiff further alleges that the inmate-on-inmate violence is "tied to" and "exacerbated by" the lack of reporting and inadequate training and supervision because the investigative process is "[a]n essential element to ensure inmate safety" yet the current process "fails to address, and is itself part of, the many operational breakdowns in [OPSO's] accountability systems," allowing officers to "ignore[] fights or requests for help" from inmates without consequence.[30] Thus, Plaintiff has sufficiently alleged that Sheriff Gusman was deliberately indifferent in failing to correct these policies, because the need for more training and supervision relative to investigating and reporting incidents of inmate assaults and discipline for officer misconduct was obvious and obviously likely to result in the violation of constitutional rights in light of the DOJ findings letters and the Jail Monitor's reports, and that the failure to train and provide supervision was the moving force behind Lee and Sutherland's failure to protect him from Massey's attack because they knew they would not be disciplined for their inaction in light of these policies. *See City of Canton*, 489 U.S. at 390; *Brown*, 219 F.3d at 457; *see also Bangura v. County of Nassau*, No. 07-2966, 2009 WL 57135, at *4 (E.D.N.Y. Jan. 7, 2009) (holding plaintiff adequately stated a claim for municipal liability where he alleged municipality "failed to instruct, supervise, control, and discipline on a continuing basis corrections officers in the performance of their duties to properly supervise inmates and regularly patrol the

---

[30] *Id.* at 10-12.

tiers/areas to which they were assigned" because "[a]llegations of county officials' inattention to or knowing acquiescence in misconduct by law enforcement personnel are sufficient to allege municipal liability").

The MJ found that "any de facto policies and practices that may undergird the statistics in the DOJ and Monitor's reports relied on by [Plaintiff] were not in place when [Plaintiff] was injured" due to the appointment of the Compliance Director.[31] However, Plaintiff alleges that these "de facto policies" or customs continued beyond the appointment of the Compliance Director and even beyond when he was attacked,[32] which the Court must accept as true. *See MySpace*, 528 F.3d at 418.

In light of the foregoing, the Court finds that Sheriff Gusman's motion should be denied as to this claim.

### III.  STATE LAW CLAIMS

Because the Moving Defendants did not specifically address Plaintiff's state law claims, the MJ did not discuss them.[33] Accordingly, the Court will not consider these claims at this time.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Steven Oliver's *Motion for Review of Magistrate Judge's Decision* **(Rec. Doc. 59)** is **GRANTED**.

---

[31] (R&R, Rec. Doc. 57, at 18).
[32] (SAC, Rec. Doc. 25, at 11, 15).
[33] (R&R, Rec. Doc. 57, at 4 n.10).

**IT IS FURTHER ORDERED** that Defendants Edwin Hosli and Michael Laughlin's *Motion for Judgment on the Pleadings* **(Rec. Doc. 29)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Marlin Gusman's *Motion for Judgment on the Pleadings* **(Rec. Doc. 44)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Chaz Ruiz's *Motion for Judgment on the Pleadings* **(Rec. Doc. 45)** is **DENIED**.

New Orleans, Louisiana, this 18th day of March, 2020.

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE